UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED

SEP 3 0 2016

CLERK

| | |
|---|---|
| JOHN N. NEWELL,<br><br>          Plaintiff,<br><br>vs.<br><br>JOHN M. MCHUGH, SECRETARY OF THE ARMY; AND  THE UNITED STATES ARMY CORPS OF ENGINEERS, AGENCY,<br><br>          Defendants. | 3:15-CV-3006-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff John Newell (Newell) sued his employer, the United States Army Corps of Engineers and John McHugh, the Secretary of the Army (collectively the Corps) alleging claims of race discrimination, disparate treatment, retaliation, and hostile work environment under Title VII.  Doc. 1.[1]  Newell had filed a prior suit against the Corps with similar allegations based on different factual circumstances.  Doc. 1, CIV 14-3005-RAL.  This Court consolidated the two cases on Newell's motion.  Doc. 8; Doc. 19, CIV 14-3005-RAL.  Newell seeks compensatory damages and all damages allowed under Title VII, as well as costs and disbursements.  Doc. 1 at 5; Doc. 1 at 9, CIV 14-3005-RAL.  The Corps moved for summary judgment on all claims, Doc. 18, which Newell opposes, Doc. 26.  For the reasons explained below, this Court grants the Corps' motion for summary judgment on all claims, except the hostile work environment and constructive discharge claims.   In the interest of judicial economy, this Court defers consideration of Newell's hostile work environment and constructive discharge claims until

---

[1] This Court uses Doc. followed by a number to refer to the document number of pleadings filed in the Case Management/Electric Case Filing System in this case, CIV 15-3006-RAL.  When referring to a document number in Newell's other case, the case number CIV 14-3005-RAL will be specified.

Newell's pending Equal Employment Opportunity (EEO) claims have been resolved and Final Agency Decisions (FADs) from the Department of the Army have been issued.

## I.     Undisputed Facts

Under Local Rule 56.1, Defendants filed a Statement of Undisputed Material Facts. Doc. 20. Newell appropriately responded by filing Plaintiff's Statement of Undisputed Material Facts, Doc. 24, and Plaintiff's Statement of Disputed Material Facts, Doc. 25. This Court takes the facts in the light most favorable to Newell, as the non-moving party, and draws the facts primarily from the undisputed portion of Defendant's Statement of Undisputed Facts, Plaintiff's Statement of Undisputed Material Facts where supported by the record, and Plaintiff's Statement of Disputed Material Facts where supported by the record. Docs. 20, 24, 25. The facts in this section are not disputed. This Opinion and Order incorporates additional facts and some matters that Newell considers to be true, but which the Corps appears to contest, in discussing Newell's arguments.

Newell is an African American male who has previously served in the United States Army. Doc. 25 at ¶¶ 2–3. Newell is the only African American employee of the Corps in the region where he works; there is an admitted lack of diversity in employees at the Corps' Oahe Project. Doc. 24 at ¶¶ 35–36; Doc. 31 at ¶¶ 35–36. Prior to his initial hiring at the Corps, Newell had worked for the United States Post Office, where he was in a supervisory position for a period of time. Doc. 20 at ¶ 6; Doc. 25 at ¶ 6.

In November 2005, Newell was hired as a Power Plant Electronics Mechanic Trainee III at the Oahe Project in Pierre, South Dakota. Doc. 20 at ¶ 30; Doc. 25 at ¶ 30. The Corps runs the Oahe Project, which is one of six main stem dam projects in the upper Missouri River Basin that produce hydroelectric power. Doc. 20 at ¶ 27; Doc. 25 at ¶ 27. The Corps provides an on-

the-job trainee program through classroom training and correspondence courses, and Newell also trained with Electronic Mechanics at two of the Corps' other dam projects, the Garrison and Big Bend Projects. Doc. 20 at ¶ 31; Doc. 25 at ¶ 31. Rick Bartels (Bartels) was assigned to mentor Newell in his on-the-job training program; when Bartels was promoted from Power Plant Mechanic to Power Plant Operations and Maintenance (O & M) Supervisor, Bartels became Newell's direct line supervisor and continued to mentor Newell. Doc. 20 at ¶ 32; Doc. 25 at ¶ 32. Newell's second line supervisor was John Bartel (Bartel), the Oahe Dam Project Manager. Doc. 20 at ¶ 33; Doc. 25 at ¶ 33. Upon Bartel's retirement, Eric Stasch (Stasch), an Oahe Project engineer, was selected as Oahe Dam Project Manager. Doc. 20 at ¶ 33; Doc. 25 at ¶ 33. Jeffrey McCown (McCown) was hired as a Power Plant Mechanic in February 2006. Doc. 20 at ¶ 34; Doc. 25 at ¶ 34. Michael Magner (Magner) was hired as a Power Plant Electronics Mechanic and assigned to work with Newell in July 2006. Doc. 20 at ¶ 35; Doc. 25 at ¶ 35. In November 2006, Newell was promoted to Power Plant Electronics Mechanic Trainee, IV. Doc. 25 at ¶ 36; Doc. 20 at ¶ 36.

In April 2007, Newell reported to Bartels inappropriate lunchroom talk among his coworkers. Doc. 20 at ¶ 37; Doc. 25 at ¶ 37. Bartels then spoke to shop employees about stopping all inappropriate language in the workplace and showed a training video, produced by the EEO Commission (EEOC), to all shop employees about the Corps' anti-discrimination policies. Doc. 20 at ¶¶ 37–39; Doc. 25 at ¶¶ 37–39.

In 2007, Newell and McCown applied for the Corps' Leadership Development Program, designed to develop leadership and management skills as distinct from other technical trainings; McCown was selected to participate in the program and successfully completed it. Doc. 24 at ¶¶ 37–38; Doc. 25 at ¶ 40; Doc. 31 at ¶¶ 37–38.

3

On July 23, 2007, Newell reported a second incident of offensive lunchroom talk concerning race to Bartels. Doc. 20 at ¶ 41; Doc. 25 at ¶ 41. Bartels informed Bartel, and Bartel verbally reprimanded two employees involved, Magner and McCown, and made a written record of the incident. Doc. 20 at ¶ 42; Doc. 25 at ¶ 42. On September 6, 2007, Newell filed a formal complaint of race discrimination regarding this issue with the EEOC. Doc. 21-8. In 2010, Newell and the Corps entered into a settlement agreement regarding his complaint, under which Newell received benefits and agreed to "waive his right to pursue . . . judicial action . . . concerning the matters raised in this complaint." Doc. 21-11 at 2. As part of the settlement, Newell also agreed to withdraw "any other EEO complaints of reprisal filed prior to the date of this agreement," which was March 10, 2010. Doc. 21-11 at 2.

In 2010, Bartels retired from the position of O & M Supervisor position, and Newell applied for this position. Doc. 20 at ¶¶ 55–56; Doc. 25 at ¶¶ 55–56. Newell was not hired for this position, and did not file a complaint with the EEOC alleging racial discrimination or retaliation in the hiring process. Doc. 20 at ¶¶ 57–58; Doc. 25 at ¶¶ 57–58.

In March 2011, an Assistant O & M position was advertised, and Newell applied for this position. Doc. 20 at ¶¶ 59–61; Doc. 25 at ¶¶ 59-61. Newell made the initial list of applicants, and was then part of the list of six applicants whose qualifications were rated on a defined matrix. Doc. 20 at ¶¶ 61–62; Doc. 25 at ¶¶ 61–62. The applicants for this position were rated by Stasch, the lead hiring official; Richard Spiger (Spiger), the O & M Supervisor at the Oahe Project; and Thomas Curran (Curran), the Operations Project Manager from the Ft. Randall Dam Project, an individual who had no knowledge of Newell, including no awareness of his race or prior EEO activity. Doc. 20 at ¶¶ 61–64; Doc. 25 at ¶¶ 61–64. Newell was ranked fifth of the

4

six applicants by Stasch; fifth by Curran; and fourth by Spiger.[2]  Doc. 20 at ¶¶ 62–64; Doc. 25 at ¶¶ 62–64.  Because he was not one of the top three individuals ranked, he did not receive an interview and was not hired for the position.  Doc. 20 at ¶¶ 65–67; Doc. 25 at ¶¶ 65–67. McCown instead was hired for the Assistant O & M position.  Doc. 20 at ¶ 67; Doc. 25 at ¶ 67. Newell filed an EEO charge regarding this issue, alleging he was denied an interview because of race discrimination and reprisal for previous EEO activity.  Doc. 20 at ¶ 68; Doc. 25 at ¶ 68.

After a visit to the Oahe Project from an Industrial Hygienist, in October 2011 Newell's workspace was relocated into a space shared with Magner.  Doc. 20 at ¶ 72; Doc. 25 at ¶ 72. Shortly after, Spiger directed Newell and Magner to report daily to McCown to discuss the day's work assignments in an effort to increase productivity at the Oahe Project.  Doc. 20 at ¶ 73; Doc. 25 at ¶ 73.  Newell at this point requested that he be trained to fill in for Spiger when Spiger was away from the Oahe Project.  Doc. 20 at ¶ 74; Doc. 25 at ¶ 74.  Spiger denied this request because McCown was already trained and responsible for filling in for Spiger when Spiger was away.  Doc. 20 at ¶ 74; Doc. 25 at ¶ 74.

For the period of February 2, 2011 to January 31, 2012, Newell received a performance rating of 3 (Successful), which did not entitle him to receive a cash bonus performance award. Doc. 20 at ¶ 92; Doc. 25 at ¶ 92.  Newell filed a claim with the EEOC alleging racial discrimination for this performance rating.  Doc. 20 at ¶ 93; Doc. 25 at ¶ 93.  In 2014, the Army issued an FAD finding that there was no evidence of discriminatory animus in the performance rating.  Doc. 20 at ¶¶ 100–01; Doc. 25 at ¶¶ 100–01.

---

[2] Newell claims that Spiger's inclusion on the hiring committee was improper because Spiger is a personal friend of McCown.  Doc. 24 at ¶¶ 57–58; Doc. 31 at ¶¶ 57–58.  However, Spiger ranked Newell higher than did the other two members of the committee.  Newell does not criticize the other two choices for the hiring committee.

On April 18, 2013, Stasch issued Newell a formal Letter of Reprimand for discussing the performance ratings of employees obtained through Newell's participating in prior EEO activity. Doc. 20 at ¶ 102; Doc. 25 at ¶ 102; Doc. 21-29 at 4–5.   After a claim to the EEOC, the Administrative Law Judge (ALJ) found that this reprimand letter constituted retaliatory discipline for Newell's prior EEO activity and required the reprimand letter be removed from Newell's file, compensatory damages be paid to Newell, and training be provided at the Oahe Project; the Army concurred in this finding with an FAD. Doc. 20 at ¶¶ 105–07; Doc. 25 at ¶¶ 105–07. Stasch did as instructed, and gave Newell a verbal reprimand for the conduct rather than the formal Letter of Reprimand. Doc. 27-4 at 91. Also, in 2013, Newell was disciplined for being absent without leave (AWOL) from his position because he did not adhere to the Corps' written policy on leave time request. Doc. 20 at ¶ 90; Doc. 25 at ¶ 90. Newell did not object to this discipline, nor did he file an EEO claim regarding the instance. Doc. 20 at ¶ 116; Doc. 25 at ¶ 116.

Newell made another complaint to the EEOC after McCown made comments during a weekly safety meeting that a Comprehensive Facility Review Team would be arriving and used language involving burning crucifixes and hangings[3] to indicate the severity and thoroughness of the group's review. Doc. 20 at ¶¶ 108–111; Doc. 25 at ¶¶ 108–111. The complaint was dismissed for failure to state a claim, because the statement did not constitute unlawful employment practice and Newell did not present any personal harm or loss of employment privileges or conditions because of the statement. Doc. 20 at ¶ 112; Doc. 21-35 (text of FAD dismissing complaint); Doc. 25 at ¶ 112.

---

[3] The full statement, according to Newell, is "The outside investigation group will be comin' into the gate and they will be bringin' crucifixes and someone's gonn' be hung." Doc. 25 at ¶ 108; Doc. 20 at ¶ 108.

In the summer of 2013, a memo was circulated indicating that only one electronics mechanic position would be needed, but to avoid a Reduction in Force (RIF), one of the electronics mechanics would be assigned on a two-month shift to either the electric or mechanics shop. Doc. 24 at ¶ 117; Doc. 25 at ¶ 142; Doc. 28-1; Doc. 31 at ¶ 117. At this point, for various reasons, Bartels and Spiger told Magner not to share all of his information about the electronics mechanic position with Newell. Doc. 24 at ¶¶ 118–27; Doc. 31 at ¶¶ 118–27.

In June 2014, Newell was issued a Notice of Proposed Suspension for failure to properly inspect plant safety equipment and for discrepancies in recording time in the Oahe Project's work order system. Doc. 20 at ¶ 127; Doc. 24 at ¶ 100; Doc. 25 at ¶ 127. Within a month, Newell filed a claim with the EEOC that this proposed suspension constituted racial discrimination, reprisal, and a hostile work environment. Doc. 20 at ¶ 128; Doc. 25 at ¶ 128. Stasch ultimately issued Newell a seven-day suspension for this conduct. Doc. 20 at ¶ 130; Doc. 25 at ¶ 130. Newell filed another EEO claim regarding this final suspension, which was consolidated with the first. Doc. 20 at ¶¶ 131–32; Doc. 25 at ¶¶ 131–32. No Army FAD has been issued on these claims. Doc. 20 at ¶ 132; Doc. 25 at ¶ 132. Recently, Newell requested to be trained for an Operator position, and is currently engaging in training for the position. Doc. 20 at ¶ 142; Doc. 25 at ¶ 142.

Newell believes that he is treated differently than other Corps employees of the Oahe Project and that he is subject to what he calls the "Newell Rules." Doc. 24 at ¶ 93. Magner indeed believes that the Corps would like to get rid of Newell, not because of Newell's race, but because of his repeated EEO filings. Doc. 24 at ¶ 140. Stasch reports that Spiger has expressed frustration with the Corps' paying Newell so that Newell can sue the Corps, although Spiger denies making such a statement. Doc. 24 at ¶ 162.

7

## II.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is generally disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Cases alleging discrimination are subject to the same summary judgment standard as any other case. Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

## III.   Race Discrimination

Newell argues that the Corps violated Title VII of the Civil Rights Act of 1964 by engaging in racial discrimination and retaliating against him for protected activities. Doc. 1 at 4–5; Doc. 1 at 6–8, CIV 14-3005-RAL. Title VII prohibits an employer from discriminating

against employees with respect to their "compensation, terms, conditions, or privileges of employment, because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer is also prohibited from retaliating against an employee because the employee "opposed any practice made an unlawful employment practice by" the provisions of Title VII. Id. § 2000e-3(a). Newell can establish his Title VII race-based discrimination claims through direct evidence, or in the absence of direct evidence, through the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Newell does not point to direct evidence of racial discrimination, but makes arguments using the McDonnell Douglas framework. See Doc. 26 at 3. In order for Newell's claims to survive a summary judgment motion, the McDonnell Douglas framework requires that Newell demonstrate a prima facie case of race discrimination. Macklin v. FMC Transp., Inc., 815 F.3d 425, 427-28 (8th Cir. 2016); Erenberg v. Methodist Hosp., 357 F.3d 787, 792–93 (8th Cir. 2004). If Newell establishes a prima facie case of race discrimination, the burden shifts to the Corps to show a legitimate, nondiscriminatory reason for the adverse action of which Newell complains. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993). If the Corps is able to do so, the burden shifts back to Newell to establish that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Despite the burden-shifting nature of the McDonnell Douglas framework, the ultimate burden of proving unlawful discrimination remains with Newell. St. Mary's Honor Ctr., 509 U.S. at 507.

### A. Failure to Hire

### 1. O & M Supervisor Position

In Newell's first complaint filed with this Court, he complains that he was not interviewed or hired for the O & M Supervisor position after Bartels retired from the position. Doc. 1 at ¶¶ 28–30, CIV 14-3005-RAL. However, Newell concedes that he did not file an EEO claim for this non-hiring.[4]  Doc. 24 at ¶ 55. Title VII "establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). Newell must show that he has exhausted these administrative remedies before this Court can entertain his claims. See Briley v. Carlin, 172 F.3d 567, 570–71 (8th Cir. 1999); see also Edwards v. Dep't of the Army, 708 F.2d 1344, 1346 (8th Cir. 1983) (collecting cases noting that it "is well settled that administrative remedies must be fully exhausted before jurisdiction vests in the federal courts"). Because Newell did not file an EEO claim, Newell has failed to exhaust the administrative remedies available to him regarding the O & M Supervisor position, and the Corps' motion for summary judgment on this claim is granted.

## 2. Assistant O & M Position

Newell also alleges that he was racially discriminated against when the Corps failed to hire him for the Assistant O & M position and instead hired McCown. Doc. 1 at ¶¶ 32–36, CIV 14-3005-RAL; Doc. 26 at 2. Newell timely submitted an EEO complaint for this issue, Doc. 21-13 at 1, and received both a Report of Investigation (ROI) from the EEOC, Doc. 21-14, and an FAD from the Army indicating it found no evidence of racial discrimination in the hiring of

---

[4] Newell has failed to respond to this failure-to-exhaust defense in his Brief in Opposition to Defendant's Motion for Summary Judgment on any of the instances raised by the Corps. Doc. 26. Generally, "failure to oppose a basis for summary judgment constitutes waiver of that argument." Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009); see also Stock v. BNSF Ry. Co., No. 4:14-CV-4074-RAL, 2016 WL 4572188, at *3 (D.S.D. Aug. 31, 2016) (waiver of argument by failing to respond to authority in defendant's motion for summary judgment); Roy v. Lake Cty., No. CIV. 12-4070-KES, 2014 WL 3386022, at *3 (D.S.D. July 19, 2014) (same).

McCown over Newell, Doc. 21-28 at 14–15. Under the <u>McDonnell Douglas</u> framework for a race discrimination failure to hire claim, Newell first must establish a prima facie case of discrimination. <u>Gilbert v. Des Moines Area Cmty. Coll.</u>, 495 F.3d 906, 914 (8th Cir. 2007). If he can do this, the burden shifts to the Corps to articulate a nondiscriminatory reason for its actions; if a reason can be offered, the burden shifts backs to Newell to show that the Corps' explanation is a pretext for unlawful race discrimination. <u>Id.</u> The burden to show an employer's pretext in a hiring decision merges with the plaintiff's burden to ultimately persuade this Court that there was intentional race-based discrimination. <u>Barber v. C1 Truck Driver Training, LLC</u>, 656 F.3d 782, 792 (8th Cir. 2011) (citing <u>Torgerson</u>, 643 F.3d at 1046).

In order to establish a prima facie case for racial discrimination in a hiring situation, Newell must prove that 1) he is a member of a protected class; 2) he was qualified for an open position; 3) he was denied that position; and 4) the Corps filled the position with someone not in the same protected class. <u>Torgerson</u>, 643 F.3d at 1046; <u>Dixon v. Pulaski Cty. Special Sch. Dist.</u>, 578 F.3d 862, 867–68 (8th Cir. 2009), <u>abrogated on other grounds by</u> <u>Torgerson</u>, 643 F.3d at 1058; <u>Arraleh v. Cty. of Ramsey</u>, 461 F.3d 967, 975 (8th Cir. 2006). The Corps and Newell both acknowledge that as an African American, Newell is a member of a protected class, he was denied an open position, and the position was filled with someone not in the same protected class.[5] Doc. 19 at 5; Doc. 24 at ¶ 56; Doc. 25 at ¶ 2; Doc. 26 at 2; Doc. 31 at ¶ 56.

As did the employer in <u>Torgerson</u>, the Corps here argues that Newell did not meet his burden of establishing a prima facie case showing an inference of discrimination because he did not demonstrate that he was more qualified than McCown, the individual who ultimately received the position. Doc. 19 at 6, 9; <u>see also</u> <u>Torgerson</u>, 643 F.3d at 1046–47. However, to

---

[5] McCown has identified himself as both Caucasian and Native American. Doc. 19 at 5; Doc. 27-7 at 26. In both instances, he is a member of a different protected class than Newell.

establish a prima facie case of discrimination for failure to hire in the Eighth Circuit, a complainant need only show that he was qualified for the position, not that the individual hired was *less* qualified than the complainant. Torgerson, 643 F.3d at 1047; Dixon, 578 F.3d at 868; Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 721–22 (8th Cir. 2003), abrogated on other grounds by Torgerson, 643 F.3d at 1059; Hawkins v. Anheuser–Busch, Inc., 697 F.2d 810, 813–14 (8th Cir. 1983).   The fact that Newell made the list of top six candidates for the Assistant O & M position is enough of a showing of qualification for the position to establish a prima facie case. Doc. 20 at ¶ 61; Doc. 25 at ¶ 61; see also Torgerson, 643 F.3d at 1047 (two Native American males who made the eligibility list for open firefighter positions met their burden of establishing they were qualified for the position in making a prima facie case); Hase v. Miss. Div. of Emp't Sec., 972 F.2d 893, 896 n. 1 (8th Cir. 1992) (inclusion on list of top ten candidates for an open position was enough to show that employee was qualified for the position in establishing a prima facie case of age and gender discrimination).

With a prima facie case of race discrimination established, the burden shifts to the Corps to articulate "one or more legitimate, nondiscriminatory reasons for its decision." Arraleh, 461 F.3d at 975.   "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Torgerson, 643 F.3d at 1047 (citing Floyd v. Mo. Dep't of Soc. Servs., 188 F.3d 932, 936 (8th Cir. 1999)).   The Corps has met this burden through evidence that a non-discriminatory evaluation matrix resulted in Newell not being selected to interview for the Assistant O & M position, and thus not being hired for the position. Doc. 19 at 6–7.   This hiring matrix assessed the applicants' qualities and involved ranking by three separate individuals, including one who was not from the Oahe Project and was completely unfamiliar with any of the applications. Doc. 20 at ¶¶ 61–65; Doc. 25 at ¶¶

12

61–65. None of the three ranked Newell among their top three candidates, so Newell did not get interviewed. Doc. 20 at ¶¶ 62–65; Doc. 25 at ¶¶ 62–65. Specifically, by the three individuals who ranked the candidates, Newell ranked fourth out of six once, and fifth out of six twice. Doc. 20 at ¶¶ 62–64; Doc. 25 at ¶¶ 62–64.

The burden then shifts to Newell to demonstrate that the Corps' stated reason for not hiring him is a pretext for race discrimination. Torgerson, 643 F.3d at 1047. Newell can demonstrate "a material question of fact regarding pretext" in at least two ways; first, "that a discriminatory reason more likely motivated" the Corps, or second, "indirectly by showing that the [Corps'] proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256; see also Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002) (noting that an employer's explanation may be unworthy of credence because it has "no basis in fact"). Either way, Newell must show that the employer's stated reason for the non-hiring was mere pretext for the actual, prohibited reason. Torgerson, 643 F.3d at 1047. Newell argues that the Corps' proffered explanation for the non-hiring is pretext because the criteria used for the hiring matrix was unreasonably subjective, leading to a failure to consider Newell's allegedly superior qualifications and McCown's discipline history. Doc. 26 at 3–11. To support this argument under Eighth Circuit precedent, Newell "must show that the [Corps] hired a *less* qualified applicant." Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004) (emphasis in original); see also Ash v. Tyson Foods, Inc., 546 U.S. 454, 457–58 (2006) (per curiam) (approving cases from three circuits that use similar standards: where pretext could be inferred if no reasonable person would have chosen the hired candidate over plaintiff; where the plaintiff's qualifications are clearly superior to the candidate hired; and where a reasonable employer would have found the plaintiff to be more qualified than the hired candidate); Pierce v. Marsh, 859 F.2d 601, 604

13

(8th Cir. 1988) ("The mere existence of comparable qualifications between two applicants . . . alone does not raise an inference of racial discrimination.").

First, Newell argues that while one of the categories for hiring was "demonstrated performance," this improperly did not include disciplinary history, which would have revealed McCown's prior discipline at the Oahe Project. Doc. 26 at 5–6. The demonstrated performance category accounted for 25% of the hiring criteria, as created by Stasch and approved by Kathryn M. Schenk (Schenk), the Chief of the Operations Division. Doc. 21-17 at 3. Neither the description of the demonstrated performance category,[6] nor the hiring matrix,[7] includes disciplinary history, id. at 3–4, and Stasch testified that disciplinary history has never been included in his hiring processes, Doc. 27-4 at 21–23. Newell has provided no evidence that disciplinary history has been considered in the past; only that it should be considered because "an employee's disciplinary history is an obvious and standard means of measurement." Doc. 26 at 5. Even if this Court deemed the Corps non-inclusion of disciplinary history in the hiring criteria subjective, "[i]f employees are evaluated on an objective performance scale by a uniformly applied process, the subjectivity of some components cannot in and of itself prove pretext or discriminatory intent." Torgerson, 643 F.3d at 1049–50. The Corps here has adequately met its burden to show there is no genuine issue of material fact regarding the non-inclusion of disciplinary performance, because all applicants were subject to the same matrix and hiring criteria, which focused on principally objective considerations of training and experience.

---

[6] The full description of the category reads: "The panel will consider the Demonstrated Performance in hydropower operation and maintenance. Demonstrated Performance is a measure of how well the individual has performed while gaining this experience. The individual shall have a record of high quality work and be a proven high performer. The individual shall also have a record of individual professional development." Doc. 21-17 at 3.

[7] The hiring matrix for this category includes the line items: "Demonstrated Performance in PP O & M Activities" and "Demonstrated Performance in Recordkeeping/ Documen [sic]." Doc. 21-17 at 4.

See Wingate v. Gage Cty Sch. Dist., 528 F.3d 1074, 1080 (8th Cir. 2008) (permitting the use of subjective criteria supporting hiring decisions when combined with objective criteria and education); Elliott v. Montgomery Ward & Co., 967 F.2d 1258, 1263 (8th Cir. 1992) (affirming the use of an evaluation process with subjective components when it is uniformly applied).

In his statement of material facts, Newell asserts that Stasch impermissibly included experience in number of years of hydropower operation and maintenance in his own allocation of points on the hiring matrix, when specific years of experience was neither part of how the position was advertised nor included as a specific line item in the hiring matrix. Doc. 24 at ¶ 61; Doc. 31 at ¶ 61; Doc. 21-15 at 2 (noting only that "1 year of specialized experience" was necessary to apply). The evidence of record on this issue is that Stasch only used the years of hydropower experience as a guideline for which of the fifteen individuals who applied for the position would be ranked in the hiring matrix. Doc. 27-4 at 78; see also Doc. 21-17 at 1 ("Fifteen total names were referred by HR. Those names were reduced by myself to six. The criteria utilized in the initial cut was basically hydropower experience, yes or no.") Newell has failed to show that there is a genuine issue of material fact regarding the alleged improper consideration of years of hydropower operation and maintenance experience.

Newell also argues that his own supervisory experience in his prior job with the United States Post Office was not properly included in the evaluation. Doc. 24 at ¶¶ 63–64. Managerial and supervisory experience was listed as having a 20% weight in the approved selection criteria as approved by Schenk, Doc. 21-17 at 3, and was listed as a specific line item on the hiring matrix, id. at 4. Newell has not provided any evidence that his supervisory experience in this previous job was *not* properly considered or included in the ranking process, other than his own belief. See Doc. 24 at ¶ 63 ("Newell testified that he is more qualified than McCown because . .

15

. his supervisory experience was unfairly excluded."). There is evidence in the record that Newell's supervisory experience was considered by the hiring committee through consideration of Newell's application. See Doc. 21-20 at 11–12 (Curran's testimony that he saw and read "mail carrier/supervisor" title on Newell's resume, but did not assign it value on the matrix because the resume did not give any detail on the length of time the position was held); see also Doc. 21-17 at 4, 6 (showing that Stasch gave Newell 3/5 points, and Spiger gave Newell 5/5 points for supervisory experience).

Newell also argues that the hiring manager for this position, Stasch, considered Newell's race and EEO activity in the process. Doc. 26 at 10. Newell bases this argument on testimony from Stasch that he always considers Newell's race. Id. However, the testimony pointed to by Newell has nothing to do with considering Newell's race in the Assistant O & M hiring process, but instead concerns Newell's other complaints about his work environment. Doc. 27-4 at 58–59. Specifically, Stasch testified that "we want to make sure we keep the discrimination and race out of all of our work," and "we have to make sure that we don't do anything that would discriminate against him." Doc. 27-4 at 58–59. Newell has not established a genuine issue of material fact regarding any of his complaints about the hiring process that would raise an issue of pretext,[8] and has not succeeded in his ultimate burden of establishing a genuine issue of material fact on whether he was discriminated against in the hiring process. See Barber, 656 F.3d at 792.

_____

[8] In a footnote, Newell also attempts to show that this hiring process was superficial because the "Communication and Personal Relations Skills" category of the matrix included oral and written skills, but only resumes were considered at this part of the process, and thus there is no way that Curran, the outside observer, could properly rate Newell's oral skills. Doc. 26 at 7 n.24. However, this appears to be a minute error in the matrix. The communication category in the accounted for only 15% of the overall decision. See Doc. 27-12 at 2. On the matrix itself, the communication category was broken down into general computer skills with a maximum of ten points, and communication skills incorporating both oral and written skills with a maximum of five points. Doc. 27-12 at 3. Oral skills may have been considered then for a maximum of 2.5

## B. Disparate Treatment

Newell also claims as a portion of his race discrimination claim that he was subject to disparate treatment because of his race. Doc. 1 at ¶¶ 47–48, CIV 14-3005-RAL; Doc. 1 at ¶¶ 34–36. To establish a prima facie case of racial discrimination under Title VII based on disparate treatment, Newell must show that he "(1) is in a protected group, (2) was qualified for [his] position, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated employee outside the protected group." Tatum v. City of Berkeley, 408 F.3d 543, 553 (8th Cir. 2005); see also Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005) (noting that the fourth element includes that the circumstances give rise to an inference of discrimination because similarly situated employees outside the protected group were treated differently); Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). The burden on the plaintiff at this stage is not onerous. Burdine, 450 U.S. at 253. If Newell is able to establish a prima facie case, the McDonnell Douglas burden shifting framework approach is used. In his briefing, Newell alleges two main areas of disparate treatment evidencing race discrimination: discipline, Doc. 26 at 18–20; and workplace advancement after a proposed RIF memo, Doc. 26 at 20–21.

Concerning disparate treatment in discipline, Newell alleges he was disciplined for not following the Corps leave request policy; he was disciplined for failing to properly document his time in the Corps' time management system; and he was disciplined for failing to properly inspect fire extinguishers and other safety materials. However, no evidence has been provided that the Army has issued an FAD in any of these situations, and thus these issues are not

---

points out of the 100 points for the position total. Moreover, Newell received the full five points for oral and written skills by all three raters, so there was no conceivable adverse impact on Newell. Doc. 21-17 at 4–6.

reviewable at this time.  See Doc. 20 at ¶¶ 116, 132; Doc. 25 at ¶¶ 116, 132; Doc. 26 at 12, 15;
Williams, 21 F.3d at 222.

Newell also submits that as part of this discipline, he was required to report daily to one
of his supervisors, McCown, who had been the subject of one of Newell's prior EEO complaints.
Doc. 26 at 20.  This daily reporting requirement was contested in an EEO claim by Newell, and
the Army has issued an FAD on the issue.  Doc. 21-13 at 7.  The Corps alleges that this daily
reporting requirement is not an "adverse employment action," Tatum, 408 F.3d at 553, one of the
elements Newell is required to prove to show a prima facie case of discrimination under
disparate treatment, Doc. 19 at 13–14.  An employment action is considered adverse in disparate
treatment scenarios when there "is a tangible change in working conditions that produces a
material employment disadvantage," and "minor changes in working conditions that merely
inconvenience an employee or alter an employee's work responsibilities do not" meet this
standard.  Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005).  Newell has not provided
evidence to this Court that the requirement that he report daily to his supervisor is anything more
than a minor change in his working conditions, even though it was to a supervisor with whom he
had past difficulty.  Furthermore, even if this Court were to consider the daily reporting
requirement an adverse action, Newell has failed to establish the fourth element in a prima facie
case, that he "was treated less favorably than a similarly situated employee outside the protected
group."  Tatum, 408 F.3d at 553.  Newell alleges that Magner, a similarly situated employee, was
not required to report daily to McCown, but was allowed to report daily to Spiger.  Doc. 26 at
20.[9]  However, a careful reading of the record reveals testimony from Spiger that both Magner

---

[9] It is worth pointing out that Newell makes this allegation in his brief through the statement:
"The requirement to report to McCown was expressed as a time management tool, but it is not
disputed that while Spiger allowed Magner to avoid reporting to McCown, he continued to

and Newell were subject to the same daily reporting requirements: If McCown was not available, they could contact Spiger so that time was not wasted waiting. Doc. 27-3 at 58–60 ("I think John [Newell] and Mike [Magner] reported to Jeff [McCown] just as many times equally, whether they liked it or not, and if he wasn't around, I was."). Newell has provided no evidence that there is a genuine issue of material fact regarding disparate treatment or discrimination in the daily reporting requirement.

Newell alleges disparate treatment based on his race in connection with an upcoming RIF. Doc. 26 at 20. According to Newell, the Corps circulated a memorandum indicating that one of the two electronics mechanic positions could be subject to an RIF, and Spiger and Bartels told Magner, the other electronics mechanic, not to share information with Newell in preparation for the upcoming RIF. Doc. 26 at 20–21. While this argument seems to portray more intent of race discrimination and retaliation than any of Newell's other claims, it is currently beyond this Court's review. No evidence has been provided to this Court that Newell has filed a complaint with the EEOC regarding this matter. As above, Newell's administrative remedies for this claim appear not to have been exhausted, and this Court must allow the administrative process to be completed before becoming involved in the complaint.

Newell also has asserted that the Corps requiring him to relocate his workspace was an act of racial discrimination. Doc. 21-13 at 7; Doc. 20 at ¶ 87; Doc. 24 at ¶ 129; Doc. 25 at ¶ 72. The Corps asserts that this action cannot be considered materially adverse under the

---

require Newell to make the daily report." Doc. 26 at 20. This statement does not include any citation to any of the four statement of facts documents filed in the court record, or to any part of the Administrative Record. Tracing back to the relevant paragraphs in Plaintiff's Statement of Material Facts, reveals two sentences that indicate "Magner was not reporting to McCown . . . This is because Spiger allowed Magner to report directly to Spiger." Doc. 24 at ¶ 70. Moving back to the cited portion of the Administrative Record, Doc. 27-3 at 58–59, reveals the actual testimony from Spiger quoted above, indicating both employees could report to Spiger directly if McCown was not available.

circumstances. Doc. 19 at 13. The Eighth Circuit has repeatedly affirmed that a relocation in a work environment, especially where there is no evidence that it interfered with an employee's work duties or employment, is not a material adverse employment action sufficient to make a prima facie case. See Fercello v. Cty. of Ramsey, 612 F.3d 1069, 1078–79 (8th Cir. 2010) (office relocation from office with, to office without, a window not a materially adverse action); Gilbert, 495 F.3d at 918 ("[Plaintiff's] new work space may not have been as desirable as his previous quarters . . . but Title VII does not protect employees 'from those petty slights or minor annoyances that often take place at work and that all employees experience.'" (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006))). Although Newell has characterized the new workspace as a "closet," Doc. 25 at ¶ 72, he has not provided any evidence that the work station relocation "rendered [him] unable to complete [his] duties or that it otherwise interfered with [his] employment to an extent that would deter a reasonable person from making a harassment claim," Fercello, 612 F.3d at 1079. The change in Newell's workspace was not a materially adverse action sufficient to create a prima facie showing of race discrimination.

## C. Hostile Work Environment

As a portion of his race discrimination claim, Newell claims that the Corps has long subjected him to a hostile work environment. Doc. 1 at ¶ 46, CIV 14-3005-RAL; Doc. 1 at ¶ 33. To establish this claim, Newell must prove that "(1) []he is a member of a protected group; (2) []he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." Clay v. Credit Bureau Enters., Inc., 754 F.3d 535, 540 (8th Cir. 2014) (quoting Malone v. Ameren UE, 646 F.3d 512, 517 (2011)). The Corps can be liable for

harassment by Newell's non-supervisory coworkers only if it "knew or should have known of the harassment and failed to take proper remedial action." Tatum, 408 F.3d at 550.  In order to establish the fourth element, Newell must show that the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Clay, 754 F.3d at 540 (quoting Malone, 646 F.3d at 517). This requires a finding that the environment was both one that "a reasonable person would find hostile and one that the victim actually perceived as abusive." Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002).  In determining whether a workplace is objectively hostile, courts must consider "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance." Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 892–93 (8th Cir. 2005). "No single factor is required," and it "is not, and by its nature cannot be, a mathematically precise test." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22–23 (1993).

Many of Newell's arguments about a hostile work environment reference conduct of the Corps that is the subject of pending EEO claims.  The interests of justice for the litigants and judicial economy merit denying summary judgment without prejudice to renewing the motion after Newell's remaining EEO claims have received FADs from the Army.  Perhaps the outcome of those EEO claims will address Newell's concerns with the Corps' work environment or will surface before this Court shortly to allow consideration of the work environment in its totality. This Court of course has inherent authority to stay an action or defer decision of an issue for a later time.  See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the

21

causes on its docket with economy of time and effort for itself, for counsel, and for litigants.");
Contracting Nw., Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983) (affirming a
district court's "inherent power to grant [a] stay in order to control its docket, conserve judicial
resources, and provide for a just determination of the cases pending before it"). While none of
the Corps' actions presented by Newell reviewable at this time when viewed separately appear to
rise to the level of race discrimination or retaliation, this Court cannot determine as a matter of
law that when viewed in conjunction with the allegations in currently pending EEO claims,
Newell has not been subject to a hostile work environment.[10]  The comments made by Magner
that there is a "conspiracy" to get rid of Newell because of his EEO claims, and the alleged
statement by Spiger objecting to paying Newell simply for him to sue the Corps suggest that a
hard look at the totality of the work environment may be warranted once the remaining EEO
claims are resolved. See Doc. 24 at ¶¶ 140, 162; Doc. 27-4 at 115; Doc. 27-5 at 30; Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different
in kind from discrete acts. Their very nature involves repeated conduct. . . . Such claims are
based on the cumulative effect of individual acts."); Cottrill v. MFA, Inc., 443 F.3d 629, 635 (8th
Cir. 2006) (finding administrative remedies had been exhausted on a hostile work environment
sexual harassment claim even when additional evidence was provided beyond that formally

_____

[10] As one example of why this stay will advance the interests of justice and judicial economy,
Newell has asserted that McCown's statement about burning crosses is evidence of a hostile
work environment. Doc. 21-34 at 4. One offensive comment, taken alone, would not be enough
to establish a hostile work environment, especially when there has been no evidence provided
that the comment was made in reference to Newell. See Gordon v. Shafer Contracting Co., 469
F.3d 1191, 1195 (8th Cir. 2006) (finding that "three to four racially offensive comments" did not
support a hostile work environment finding, but "racially offensive remarks [made] two or three
times a week" did support such a finding). However, when taken into consideration with the
other alleged comments made in the workplace and the alleged varying nature of discipline
Newell has been subjected to, the result has the possibility to culminate in a hostile work
environment.

noted in an EEO complaint because "the charged party was not deprived of notice of the charge").

Newell argues in his briefing that he was subject to a constructive discharge because of the culmination of retaliatory actions and race discrimination at the Corps.  Doc. 26 at 16–17. "Title VII encompasses employer liability for a constructive discharge."  Pa. State Police v. Suders, 542 U.S. 129, 143 (2004).  Constructive discharge under Title VII can be a "compound claim" that joins with either harassment or hostile work environment.  Id. at 147.  But, "[h]ostile work environment and constructive discharge claims may be wholly distinct causes of action under Title VII," because although "a hostile work environment can form the basis for a constructive discharge allegation, hostile work environment discrimination can exist absent a tangible employment action."  Winspear v. Cmty. Dev., Inc., 574 F.3d 604, 607 (8th Cir. 2009) (internal quotation and citations omitted); see also Pa. State Police, 542 U.S. at 147 ("A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); Wilkie v. Dep't of Health and Human Servs., 638 F.3d 944, 954 (8th Cir. 2011) (finding that because a plaintiff's hostile work environment claim failed, and the plaintiff's constructive discharge claim was presented on the same evidence, it too failed); O'Brien v. Dep't of Agric., 532 F.3d 805, 811 (8th Cir. 2008) (same).  "To establish a case of constructive discharge, [Newell] must show that (1) a reasonable person in [his] situation would find [his] working conditions intolerable, and (2) the employer intended to force [him] to quit."  Rickard v. Swedish Match N. Am., Inc., 773 F.3d 181, 186 (8th Cir. 2014) (quoting Rester v. Stephens Media, LLC, 739 F.3d 1127, 1132 (8th Cir. 2014)) (internal quotations removed).  Because of the close link between hostile work environment and constructive discharge claims under Newell's allegations and Title VII, this Court denies

23

summary judgment at this time on Newell's constructive discharge claim without prejudice to renewing the motion after Newell's remaining EEO claims have received FADs from the Army.

## IV.    Retaliation

Newell also argues that he was the subject of unlawful retaliation for protected activities under Title VII. Title VII establishes that it is "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]" 42 U.S.C. § 2000e–3(a). While retaliation is prohibited, the filing of an "EEOC complaint does 'not insulate an employee from discipline for . . . disrupting the workplace.'" Wallace v. Sparks Health System, 415 F.3d 853, 858 (8th Cir. 2005) (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)). To establish his retaliation claim, Newell must first make a prima facie case of retaliation, that "(1) []he engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." Musolf v. J.C. Penney Co., 773 F.3d 916, 918 (8th Cir. 2014) (citing Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011)). The burden on Newell to show that the complained-of materially adverse action was causally linked to the protected conduct is not difficult, with traditional principles of but-for causation to be applied. See Univ. of Tx. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Musolf, 773 F.3d at 919. After establishing a prima facie case, the standard McDonnell Douglas burden shifting analysis applies. See Pye, 641 F.3d at 1021.

The parties agree that Newell's filing of complaints of race discrimination and retaliation under Title VII are protected actions under 42 U.S.C. § 2000e–3(a).  However, the Corps and Newell disagree on whether Newell can show that any actions by the Corps constituted a materially adverse employment action.  To constitute a materially adverse employment action, Newell must establish "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68 (internal quotations and citations omitted).  The adverse action must be material because Title VII "does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  The action must be considered in relation to the reaction of a reasonable employee because § 2000e–3(a)'s "standard for judging harm must be objective." Burlington N. and Santa Fe Ry. Co., 548 U.S. at 68.  In this consideration, "[c]ontext matters," because what is a material adverse employment action is highly dependent on an employee's particular situation. Id. at 69. The parties also disagree regarding whether Newell can show a causal relationship between any material adverse employment actions and his protected EEO complaint activities.  A causal relationship, using the but-for causation standard, can be shown via a proximity in time between the protected activity and the adverse employment action, but can only be relied upon for the sole indication of causality if the actions are "very close" in time. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam); see also Univ. of Tx. Sw. Med. Ctr., 133 S. Ct. at 2528 ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); Gross, 557 U.S. at 176; Musolf, 773 F.3d at 919.

The issues of potential retaliatory conduct by the Corps that this Court can find by liberally construing Newell's complaints and briefings are discussed separately below in the order in which they appear in the complaints.[11]

## A. Denial of Requested Training

Newell first claims that he "was not mentored or trained like non-minority employees." Doc. 1 at ¶ 57(a), CIV 14-3005-RAL.  However, Newell makes no argument regarding training in his briefing with this Court.  This Court could find only one instance where Newell complained of a lack of training in completed EEO claims in the Court's record not subject to a settlement agreement.[12]  Newell tangentially claimed of a lack of training in the EEO complaint made on December 13, 2011, and after investigation an FAD was issued denying the claim's merits.  See Doc. 21-13 at 7 ("See email traffic where I was denied training at the RMO level when I requested it."); Doc. 21-18 ("I am also requesting that I be trained to fill in as O & M in your absence.").  The Corps argues that Newell did not request training for an open position, as McCown was already the individual designated to fill in for Spiger in his absence.  Doc. 19 at 15.  "An employer's denial of an employee's request for more training is not, without more, an adverse employment action."  Griffith v. City of Des Moines, 387 F.3d 733, 737 (8th Cir. 2004).  No individual was trained as a replacement O & M Supervisor in Newell's stead as Spiger already had an assistant in McCown.  Doc. 21-14 at 5.  Therefore, the denial of any request by Newell for training was not a materially adverse employment action under the undisputed material facts here.  See Box v. Principi, 442 F.3d 692, 697 (8th Cir. 2006) (no materially

---

[11] The only issues raised in Newell's briefing regarding retaliatory conduct are (1) the April 18, 2013 Letter of Reprisal; (2) the seven-day suspension for improperly checking fire extinguishers; and (3) Magner being told not to share information with Newell regarding a position in preparation for an upcoming RIF. Doc. 26 at 11–17.

[12] See Doc. 21-11.

adverse employment action where employee only documented one request for additional training that was denied and employee was otherwise adequately trained for her position).

## B.  Daily Reporting and Strict Monitoring of Work-Time Recording

Newell next claims that he "was monitored more strictly than non-minority employees" as retaliation for protected activities. Doc. 1 at ¶ 57(b), CIV 14-3005-RAL. The only actions in the record that arguably might be considered strict monitoring are the requirement that he report daily to McCown and the correction for allegedly filling out work orders incorrectly. Doc. 21-13 at 7. However, these arguments are not made anywhere in Newell's opposition to summary judgment, nor was the "retaliation" box checked in Newell's EEO complaint that include these issues. Doc. 26 at 11–17; Doc. 21-13 at 4, 7. Thus, Newell either has not alleged any specific strict "monitoring" in retaliation, or has failed to exhaust his administrative remedies regarding these claims. See Williams, 21 F.3d at 222–23 (failure to exhaust administrative remedies where only retaliation box checked on original EEO claim, where plaintiff later sought to argue race discrimination). Moreover, as discussed above, the daily reporting to McCown was not a materially adverse employment action and was something his coworker Magner had to do as well.

## C.  Non-Selection for Assistant O & M Position

In Newell's first complaint with this Court, he alleged retaliatory conduct because he "received different consideration for applications and promotions than non-minority employees received." Doc. 1 at ¶ 57(c), CIV 14-3005-RAL. Newell did file an EEO claim for this issue and marked both the "race" and "reprisal" boxes. Doc. 21-13 at 1. However, Newell neither briefed this issue under retaliation, nor mentioned a retaliation claim when the issue was briefed under race discrimination. See generally Doc. 26. The Corps argues that the failure to hire

27

Newell for the Assistant O & M position is the only employment action taken that could rise to the level of a materially adverse employment action protected from retaliation by Title VII, but that Newell has not provided any evidence that there is a causal connection between his protected EEO activity and the Corps' failure to hire for the Assistant O & M job. Doc. 19 at 12. An employer's action in failing to hire or promote is a classic example of a material adverse employment action. See Kobrin v. Univ. of Minn., 34 F.3d 698, 704 (8th Cir. 1994) (assuming for argument purposes that failure to renew a position constituted an adverse employment action based on Ninth Circuit case law finding that failure to hire constitutes an adverse employment action in a retaliation claim); Callanan v. Runyun, 903 F. Supp. 1285, 1300 (D. Minn. 1994). However, because Newell has provided no argument or evidence on this issue to the Court, "[a] party's unsupported self-serving allegation that [his] employer's decision was based on retaliation does not establish a genuine issue of material fact." Gibson v. Am. Greetings Corp., 670 F.3d 844, 857 (8th Cir. 2012) (quoting Jackson v. United Parcel Serv., Inc., 643 F.3d 1081, 1088 (8th Cir. 2011)). Furthermore, even if Newell had established a prima facie case of retaliation in the non-hiring, as discussed above Newell has failed to create a genuine issue of material fact to show pretext in the Corps' proffered reason for this hiring decision.

## D. Arbitrary Performance Evaluation

Newell also complained that he was "denied work bonuses that similarly-situated non-minorities received." Doc. 1 at ¶ 57(d), CIV 14-3005-RAL. Newell appropriately exhausted his administrative remedies on a claim involving a purportedly arbitrary performance evaluation affecting a bonus and impacting any future RIF that might exist. Doc. 21-21 at 1–2. Newell was given a rating of "successful," which under Corps standards is not enough to receive a cash bonus. See Doc. 19 at 15–16; Doc. 20 at ¶ 92; Doc. 25 at ¶ 92. However, Newell has failed to

brief this issue, and mentions it just once in his own statement of material facts. Doc. 24 at ¶ 76. The Corps denies that this action amounts to a materially adverse employment action, as required to make a prima facie case of retaliation. See Musolf, 773 F.3d at 918. Eighth Circuit authority supports the Corps' argument.   In Hasenwinkel v. Mosaic, the Eighth Circuit stated that subjecting an employee "to a negative performance evaluation" did not rise to the level of a materially adverse employment action under the Family Medical Leave Act, just as under Title VII, characterizing it instead as "slight."   809 F.3d 427, 433–34 (8th Cir. 2015); see also Fercello, 612 F.3d at 1080–81 (noting that where a proposed performance review did not cause negative consequences, it was not considered a materially adverse employment action); Sutherland v. Mo. Dep't of Corr., 580 F.3d 748, 752 (8th Cir. 2009) (finding that a change in a performance evaluation from "highly successful" to "successful" was not a material adverse action where there was no reduction in pay, salary, benefits, or prestige); Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 927 (8th Cir. 2007) (action not material adverse under the Uniformed Services Employment and Reemployment Rights Act where employee's performance still rated as "satisfactory" and there was no change in the terms or conditions of employment).[13]   Newell has failed to establish a prima facie case of retaliation on this issue.

### E.   April 18, 2013 Letter of Reprimand

The entirety of the retaliation claim in Newell's second complaint centers on the April 18, 2013 Letter of Reprimand that Newell received from Stasch. Doc. 1 at ¶¶ 26–31. Stasch placed this Letter of Reprimand in Newell's file because Newell shared with other employees private information relating to employee performance reviews obtained in a prior EEO

---

[13] But see Russell v. Principi, 257 F.3d 815, 819 (D.C. Cir. 2001) (reversing a district court grant of summary judgment for reverse racism where Caucasian employee received an "excellent" rating with a $807 bonus, and African American employee received an "outstanding" rating with a $1,355 bonus).

complaint. Doc. 24 at ¶¶ 79–81; Doc. 25 at ¶ 102. After the reprimand letter, Newell filed an EEO complaint, and after a complete EEO process, relief was suggested by the EEOC ALJ, in which the Army concurred through an FAD, that required: (1) removal of the reprimand letter from Newell's file, (2) payment of $500 to Newell, (3) training on EEOC requirements to all personnel at the Oahe Project, and (4) posting the order in a public place for sixty days. Doc. 20 at ¶¶ 103–107; Doc. 24 at ¶ 84; Doc. 25 at ¶¶ 103–07; Doc. 26 at 14.

Newell has not made any argument that the relief offered for this retaliatory reprimand letter was not "full relief." Neither does Newell argue that management at the Oahe Project did not comply with the relief ordered. Doc. 27-4 at 91–93 (testimony from Stasch indicating compliance with the relief ordered). Instead, Newell argues that Stasch disagrees with the Army's finding because he did not read the posted order. Doc. 26 at 14. This was not a requirement of the Army's FAD. Newell also appears to disagree with the verbal reprimand he received after the reprimand letter was removed from his file. Doc. 26 at 14.[14] However, the EEOC ALJ found specifically that Newell could have "received a verbal warning" for the action, and "[c]orrective action was warranted." Doc. 20 at ¶ 106; Doc. 25 at ¶ 106.

The Eighth Circuit has specifically stated that "if a claimant obtains 'full relief' as a result of the administrative proceedings, then that claimant cannot bring a lawsuit in federal court." Frye v. Aspin, 997 F.2d 426, 428 (8th Cir. 1993) (per curiam); see also Wrenn v. Sec. Dep't of Veterans Affairs, 918 F.2d 1073, 1078 (2nd Cir. 1990) ("To allow claimants . . . to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason. Continued pursuit of such claims consumes judicial and other resources,

---

[14] Newell's brief indicates that "[Stasch's] main takeaway is that he was still permitted to discipline Newell, only at a much lower and informal level." Doc. 26 at 14.

resulting in a dead-weight social loss except for giving satisfaction to litigants who prefer court proceedings to administrative relief."). In this situation, Newell has obtained full relief from the Corps for the reprimand letter and has not advanced any arguments that the relief offered was not sufficient full relief. The Corps was not prohibited from issuing a lesser verbal reprimand for this instance, as the EEOC ALJ specifically found that "[c]orrective action was warranted," and the filing of an "EEOC complaint does 'not insulate an employee from discipline for . . . disrupting the workplace.'" Doc. 24 at ¶ 84; Wallace, 415 F.3d at 858 (quoting Kiel, 169 F.3d at 1136). Furthermore, Newell has not put forth adequate evidence to suggest that a verbal reprimand would rise to the materially adverse level required to put forth a prima facie case of retaliatory action. See Delgado–O'Neil v. City of Minneapolis, 745 F. Supp. 2d 894, 903 (D. Minn. 2010) (plaintiff's receipt of verbal reprimand, without showing that the discipline "resulted in any adverse consequences, such as a demotion or loss of job responsibility" could not be considered a materially adverse employment action).

**F. Seven-Day Suspension**

Plaintiff also alleges that the seven-day suspension for Newell's alleged failure to properly inspect safety equipment and falsification of time reports was unlawful retaliation. Doc. 26 at 18–19. However, there has not been an FAD from the Army on this charge, and Newell has not yet received his right-to-sue letter. See Doc. 26 at 12, 15. This Court thus lacks the subject matter jurisdiction to consider this instance of alleged retaliatory conduct. See Nat'l R.R. Passenger Corp., 536 U.S. at 110–115 (holding that administrative exhaustion is required for each discrete instance of discrimination or retaliation because, unlike a hostile work environment claim, they are readily identifiable); Stuart v. Gen. Motors Corp., 217 F.3d 621, 630

31

(8th Cir. 2000) ("In order to initiate a claim under Title VII a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter.").

## V.     Conclusion and Order

Although the Corps' Oahe Project may not have fully embraced its internal directives to create a welcoming workplace that encourages diversity, the record before the Court establishes as a matter of law that none of Newell's complaints amount to improper racial discrimination or retaliation under Title VII, withholding judgment on Newell's hostile work environment and constructive discharge claims.  For the reasons stated above and for good cause, it is hereby

ORDERED that the Corps' Motion for Summary Judgment, Doc. 18, is granted in part on the claims of racial discrimination and retaliation. It is further

ORDERED that summary judgment on the hostile work environment and constructive discharge claims are denied without prejudice to refiling a later motion for summary judgment. This case shall be stayed until the Army issues a Final Agency Decision on Newell's existing EEO charges, at which time Newell may seek to amend his complaint if he desires and if the work environment issues he wishes to raise remain.

DATED this _30th_ day of September, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE